May it please the Court, my name is Robert Ruth, I'm the attorney for the defendant there are three principal issues in this particular appeal. The first is does probable cause to search a digital cell phone create probable cause to search all other digital storage devices? The second is does probable cause to search the digital cell phone create probable cause to search non-digital storage devices like the VHS tape that was searched? And finally why can't they search everything in the house? I don't get it. Well they only had multiple houses that he inhabits right so if you have reason to think there's you know evidence of crime or what have you in the house you go rummaging through the house. Well except they only had probable cause to believe that there was evidence of a crime on the cell phone. No that's not true because whatever you have on a instruments. Well it is transmittable to other digital devices if you have the right software. Your argument they couldn't search for printed copies of these photos either right because all they can look at is the cell phone is that what you're saying? Well I think that they had probable cause to search for a cell phone and then to search that cell phone. And that's it they can't they can't look for other places where that image could have been transferred to. Well it that there's a couple of different there's a couple of different issues there. I think that they couldn't look in a place where they shouldn't expect to find a cell phone because you only can see your search is limited to the containers. They're looking for images they're not looking for cell phones as such so wouldn't they have reason to think that the images had been transferred copied on to something else because that's extremely common. That's what people do. Well there's there's no evidence of that. No evidence of what? There's no evidence of that he had the hardware to do it that he had the software to do it or that he didn't. But the government doesn't know what he has or doesn't have. They have reason to think that he has these pornographic images. If he has them on a cell phone he's looking for something else. Well I guess. How are they supposed to find out? I don't understand that. Well you have to have probable cause to search each particular place. You have probable cause to search these residences. I think you're forgetting about reasonable inferences. I think what Judge Posner poses is a reasonable inference. If someone receives a digital image on a phone one could infer that they will transfer it to something else and store it in some other place. Okay well now that you can find that way. I disagree with it but you can find that way. Why do you disagree with it? Well there's actually there's two parts of it. There's first of all you keep saying transfer it to some place else. That's very broad generic talk. We're talking about digital devices. Well so what? I don't understand. That's the nature of this technology. You can transfer it all over the place. Well except recall easily very simply. Well I'm not there's no evidence of that. Oh come on don't you know anything about cell phones? Do you know how they work? Well I know about. Cell phone linked up to your computer. I know I know that it takes certain hardware. I know that it takes certain software. I know that cell phones have changed a lot. Well what do you have? Do you have a cell phone? Well I have a smartphone and I am able to do it. Do you have a laptop or some other kind of computer? I do. Or just your cell phone? No I have a laptop. Can you transfer stuff from your cell phone to your computer? Yes I can. I have the software and the hardware to do it. Now this is extremely common. I'll tell you what though my old cell phone couldn't. Your what? My old cell phone I didn't know how to do it. Now and we're talking about a 2009 or earlier track phone. I don't know what that is. My kids used to have a track phone and it was a piece of junk. You couldn't get it to do anything. It was a pay by the minute phone. So all we know is that this was a track phone. But even if we lose on all of this business about digital. Even if you're right that look at. It's digital. So it's really easy to move between digital devices. There's a VHS tape here. This is what? There's a VHS tape. It's the old time tape. It's not digital. They seized. They had probable cause to believe that digital images went to a phone. With that probable cause they got a warrant and seized a VHS tape. Non-digital data. You can't transfer images from a cell phone to a VHS tape. But the warrant authorized that though. Didn't it say? It did say that but it lacked probable cause. There was no probable cause to say. So all of this argument and all of this business say oh it's so easy. It's the push of a button. All of these assumptions that we make about digital data. Okay fine. It doesn't transfer to VHS tapes. I couldn't I ran a search on Google transferring digital data to VHS. I could come up with nothing. The only information is how to transfer from VHS to digital. The government. I point that out in my brief and the government doesn't even allege that it's possible. They don't even claim it's possible to take digital data and put it on a VHS tape. So all right. You can say digital data now in 2015 with modern equipment it is conceitedly easy to move digital data. But they have probable cause to believe that there are pornographic images in these residences right? They have probable cause to believe that there are images contraband images on a cell phone. No. Because if there are images in a cell phone there may be images all over the place. Well it is it from a camera right? Take pictures. Well but they don't have any evidence of that. There's nothing in the warrant about that. The only information. They know this person is a collector or you know producer or creator of pornographic material. No they don't know that. Visible pornographic material. A person may have a cell phone, may have a camera, may have a laptop, may have anything. Well they don't know that. Why can't they look through the whole house looking for pornographic images? Well all they know is that this gentleman received images that were sent to him from a cell phone by a teenage girl. That's all they know. They don't know he's a collector. They don't know that he distributes or that he produces. They don't know any of that. They don't know but they think. No they don't. They don't have anything. Look, don't interrupt me. They know that he likes pornographic images right? He gets them over his cell phone. There are of course many other ways to get pornographic material. He may have a camera right? Why wouldn't you want to be thorough and say well he's got these pornographic images over the cell phone. He may very well have other sources of such pornographic imagery. Why isn't that reasonable? Well except the Fourth Amendment requires probable cause. Yes, tell me what probable cause is. What probability is a probable cause? Is that like proof beyond a reasonable doubt? No, it's lower. Well what is it? What's the percentage of probability? Well I believe it's less than 51%. It doesn't have to be mathematical. How much less? Well it doesn't, I'll tell you what, it takes more than a maybe. That doesn't say anything. Well it says I asked you for a percentage. Well I don't think there is a percentage. Proof beyond a reasonable doubt is 90%. Okay, I don't And preponderance of the evidence 51%. Now tell me what the probable cause probability is. I don't believe it's ever been identified. Yeah, I think it's low. It's low, you're right. But it takes more than a maybe. If someone has pornographic imagery coming in on their cell phone, maybe it's reasonable for police to think, well you know, probably 10% chance that he has other such imagery. Well, yeah, I guess if the mere fact of having probable cause on a cell phone in your mind is enough to ransack everything, even non-digital devices, if that tips the scale of probable cause. He's been getting them for over a couple of years, right? She's been sending them for, I think, a couple of years. And then when she stops, there's a strong indication he's stalking her, watching her where she is. Inferences can be drawn from that. That he's collecting it over a period of time. That when it stops, he gets more aggressive. The thing is, this chain of thought is not something that the district court adopted. The district court was of the view that the only thing that connects, you need probable cause. And the only thing that connects the digital photos that were sent to the cell phone to the other possible digital storage devices is the fact that it's readily transferable. And that's it. Judge Tinder is making an important point that's different, which is that after they break up, so to speak, their digital relationship, he is still interested in her. And that suggests that he's, you know, that he'll photograph her, you know, or blackmail her, or what have you. Why isn't that? And that therefore will be these photographic images in his house. Why isn't that plausible? Do you need more than plausibility for probable cause? I think you need more than plausibility. Why? Give me a reason. It has to be, I think, what is the term?  I've never heard the court say plausible is probable. Judge Tinder was saying it sounded like substantial likelihood he would continue to want to be getting imagery of her even if it was for blackmail rather than for pleasure. Well, none of this is laid out in the warrant. None of this is the reasoning that was adopted by the district court. And the fact of the matter is, it is impossible to take digital data and make it into analog data on a VHS tape. That's a separate issue, right? If he's taking pictures of her with a camera, yes, he's not transferring digital data. The question is whether it's reasonable to think there may be, you know, non-digital photographic, pornographic imagery in his houses. Basically it's saying he's the type of person that likes this, so we can search everything. But this particular relationship with her, the harassment, that's not just type of person. That's a very specific relationship to the girl. Well, perhaps if you had evidence in the application that explained that people in these types of relationships tend to collect child pornography or tend to have child pornography on different types of devices, we don't have that. Okay. Okay, well, thank you, Mr. Ruth. Ms. Altman? Thank you. Good morning, Your Honors. May it please the Court, my name is Elizabeth Altman and I represent the United States in this case. The defendant construes and wants to construe the search warrant affidavit much too narrowly. He wants it to apply to one victim and one phone. The affidavit, however, supports seizing and searching any device or media on which evidence of child pornography, child enticement, or stalking could be found. Before I start with what was included in the warrant, the defendant talked about needing hardware, software, things like that for images to be transferred from one digital, even a digital item to another, but that just simply isn't true. The victim indicated they had a Facebook relationship and so you could open Facebook on your computer and find the images, you could open Facebook on your laptop and find images, you could open Facebook on your phone and find the images, you could open Facebook on your tablet and find images, all of that happens without any sort of transferring at all, so the idea that this needing hardware, software, going back and forth as easy as it may be is necessary, it isn't even necessary based on current technology. The warrant affidavit in this case paints a picture of the defendant as a man, he's a stalker, he's a liar, he's a sex offender, he's a child molester, and he has an interest in child pornography, that's all detailed in the search warrant affidavit. It talks about the fact that he did begin an online relationship with a then 14-year-old girl pretending to be a peer, that's how we know he's a liar, he's 45 years old. We know that he asked her to send naked pictures, so more than 300 times, 300 pictures, that's how we know he's into child pornography. She indicated, and this is all contained within the search warrant affidavit, that she tried to stop, but he threatened to show naked pictures that he already had of her to others. We know that he sent her text messages saying he wasn't going anywhere, that he was going to keep bothering her, keep asking her for pictures, keep threatening her. He sent her a text message indicating he was watching her, indicating what she looked like and where she was. Again, he's a registered sex offender, and the victim of that other crime was a 17-year-old, which again shows his sexual interest in children. Knowing all of that, that's what the district court, I'm sorry, the state court judge had before it. The state court judge signed a warrant for two locations, and the warrant authorized the officers to seize any and all devices on which child pornography, evidence of stalking, and evidence of child exploitation could be found. Once they're in the residence, they can take those things. That includes all the cell phones, all the computers, all the media, digital and analog, because all of those items could contain such evidence. The warrant didn't authorize the search for child pornography, though, did it? It wasn't child exploitation or some other variation of that? It did not say child pornography. What it said was visual depictions of the exploitation of children. Would you argue that that includes child pornography? Absolutely. Just talking a little bit about the VHS tape, because that is obviously the count of conviction. First of all, items can go digital to analog. It's not in the record, but there is a program that allows it. My program system people pulled it up for me. One-touch copying DVD to VHS, so it is possible. But you don't even have to know that it's possible. As explained in the affidavit to the warrant, we know that the defendant has an interest in child pornography, therefore it is not a stretch by any means to think that there could be child pornography on a VHS tape found in his possession. That would be child pornography in general, but also in relation to this case, there could be evidence of this specific crime. We know that he stalked her. It certainly is not even remotely difficult to believe that he would have videotaped her, meetings with her, her being in places. It also has happened to me in a case, and a colleague in a case, where someone recently has used a VHS tape to film himself interacting with minors over the computer. So this VHS tape was absolutely appropriately seized. You can sort of compare it to a drug search warrant if you wanted to. If you have information that there is one cell phone being used to arrange controlled buys and one location where the drugs are located in the house,  and search the rest of the house. You're not limited to that little bit of information just as you were not limited to perhaps the one cell phone that was being communicated with in this case. I just want to touch a little bit on good faith. The magistrate court said that it was either all or nothing that either the information, the boilerplate information that was not included in this case was common knowledge or it wasn't. If it was common knowledge, you had probable cause. If it wasn't common knowledge, the officer could not have been acting in good faith. And the government doesn't agree with that. Someone who works in this field all the time and sees how images are transferred and stored and sees how people communicate with each other may think everybody does know that and may think it is common knowledge and therefore that agent, that officer would still be acting in good faith even if that isn't the case, that everybody does know it. Second with regard to good faith, the officer in this case put together a detailed warrant, two locations. He got information from subpoenas. He subpoenaed phone companies and the cable company. He talked to the victim. He interviewed or pulled the defendant's criminal history and spent a lot of time investigating this case and putting together these warrants. The judge signed the warrants. The officer sees the items listed in the warrant. They didn't go outside of them. This is not the type of case for which the exclusionary rule is meant and it shouldn't be applied in this case. Should this court find that the affidavit did not support probable cause, the good faith exception should be applied. Thank you very much, Ms. Altman. Mr. Ruth, do you want another minute? The only thing I want to point out is the application for the warrant said that they wanted to search for physical evidence that may provide proof of child enticement or possession of child pornography contrary to Wisconsin statutes. The warrant did not grant permission to search for child pornography. They asked and it was denied. They were granted permission to search for images representing exploitation, sexual assault, and or enticement of children. How is that different than child pornography? Maybe he's a collector of child pornography. These type of people collect child pornography. They asked to search for child pornography and they said no. There's no evidence of child enticement by Wisconsin standards and there's no evidence of sexual assault. The only potential evidence is images of sexual exploitation. But by denying the request to search for child pornography in general and only granting permission to search for evidence of sexual exploitation of a child the court limited it to the facts in this application. Not that maybe he's a collector of child pornography or maybe he has an interest in child pornography. But of course if they're searching for this and they just come across the other they can take it. If it's plain view. But a VHS tape that isn't plain view of pornography or contraband, it's just a tape. It doesn't say child pornography on it. So they should have taken the VHS and gotten a warrant to search those? I think if they want to search something that's not in the warrant, they need to get a warrant. Thank you very much. We thank you for your efforts on behalf of your client. We thank Ms. Altman as well. The court will be in recess briefly because we do have another case.